CHARLES G. HUNTINGTON v. CHARLES G. PARKHURST.

*Landlord and tenant—Agreement for a lease—Tenancy at will— Yearly holding—Notice.*

1. The relation of general tenancy at will cannot be terminated by either party without notice to the other; and the tenant cannot, without justifiable cause, abandon the premises, and treat it as a surrender, without giving the notice required by the statute.

2. A tenant at will, until the tenancy is legally terminated by notice, is bound to pay for the use and occupation, and the mere vacating of the premises during the term, or while the tenancy exists, will not exonerate him from such payment.

3. Where the purchaser of a stock of goods went into possession of the store building in which they were contained under a verbal agreement with the owner to execute to the purchaser a written lease of the premises for a term of one year, with the privilege of three or five years, at an agreed yearly rental, payable in monthly installments, which lease the purchaser agreed to accept and enter into, and without any other agreement or understanding occupied the store for two months,

and paid the stipulated rent, such action is held to have converted the holding into a tenancy of one year at all events, with an additional term, depending upon the election of the lessee, as to which he was a tenant at will from year to year.

Error to Ingham. (Person, J.) Argued July 2, 1891. Decided July 28, 1891. 

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Q. A. Smith (A. D. Prosser*, of counsel), for appellant.

*A. B. Haynes (Montgomery & Lee*, of counsel), for plaintiff.

[The points of counsel are stated in the opinion, where the authorities are discussed.—REPORTER.]

CHAMPLIN, C. J. This action was commenced before a justice of the peace to recover for the use and occupation of certain premises before then claimed to have been leased by the plaintiff to the defendant. The plaintiff had judgment before the justice, and the case was appealed to the circuit court, and there, after hearing the testimony, the court directed a verdict for the plaintiff.

We quote, with a few amendments, the statement of facts taken from the supplemental brief of counsel for defendant, namely:

The plaintiff was the owner of a store building, in which was contained a stock of goods which had been attached, and which was sold by the sheriff at public auction, and purchased by the defendant. When the goods were offered for sale, the plaintiff informed the auctioneer, and he so announced, that any purchaser of the stock of goods might obtain a lease of the store. Immediately after the purchase by the defendant, the plaintiff and he talked together with reference to leasing the store; and it was then agreed between them that the plaintiff would execute to defendant a written lease of

the premises for a term of one year, with the privilege of three or five years, for a yearly rental of $500, payable monthly, in installments of $41.66. The defendant agreed to accept and enter into such a lease on those conditions, and on account of the lateness of the hour the plaintiff said he would have the lease drawn after he returned home, and they could execute it at some future time. Without any other agreement or understanding, defendant occupied the store two months, and paid the monthly rental of $41.66. The defendant, through his father, during this period of time, requested the plaintiff to execute the lease, who replied that he would do so, but that, the defendant not being present to execute the lease with him, he would have it drawn so that when they came together it could be signed.

The term commenced on the 6th day of May, 1890, and the rent was paid to July 6, 1890. On the 3d day of July the defendant removed from the premises. On the Sunday before, he had an interview with the plaintiff in which he told him that he was going to vacate, to which the plaintiff replied that he had rented the store for a year. The defendant, after he had removed from the premises, locked the door, and left the key in a bank with which plaintiff was connected, with directions to deliver it to plaintiff. Plaintiff refused to accept the key or the possession of the premises, and, after the next month's rent became due and payable, brought his action to recover for the use and occupation of the premises.

The first question to be decided is, what was the nature and extent of defendant's holding under the facts above stated? The question so ably argued by defendant's attorney in his original and supplemental briefs, and orally before the Court, namely, that the testimony shows that no actual lease was entered into, but that there was an agreement for a lease for a term of one year, with the privilege of three or five years, at an annual rental of $500, payable monthly, at the rate of $41.66, does not reach and dispose of the merits of the controversy. The terms of the lease were agreed upon, and it was agreed that they should be reduced to writing. This

doubtless was an agreement for a lease to be executed according to the terms agreed upon; but the testimony shows further that the defendant went immediately into possession under the agreement that he should have a written lease for one year, with the privilege of three or five years, as above stated, and occupied the premises and paid the stipulated rent for two months. Under such facts, the relation of landlord and tenant was created. The defendant became a tenant at will.

It is laid down by Taylor, in his work on Landlord and Tenant (section 60), that—

"Where a party enters into the possession of premises under an agreement to accept a lease for 20 months, and subsequently refuses to accept the lease, he becomes by such refusal a strict tenant at will, for he may be ejected immediately; but, if the landlord accepts rent from him monthly, or according to the terms of the original agreement, a general tenancy at will is created, commencing from the time of entry;" and "while a man who enters under a void lease is strictly a tenant at will, if he pays rent he becomes a general tenant at will or from year to year, according to circumstances."

In this case the agreement for a periodical rent, and the agreed term of a year, at all events, makes the holding of defendant a tenancy from year to year. See Tayl. Landl. & Ten. § 56, and cases cited in note 2.

Counsel for defendant claim that an entry under an agreement for a lease is a mere license, and can be terminated by either party before the written lease is executed, and cited Tayl. Landl. & Ten § 37. The author does make use of the expression that "such an agreement, however, will operate as a license to enter upon the premises agreed to be demised;" but· it was not the intention, as I think, of the author, to convey the idea that a person so agreeing for a lease might enter and occupy the premises, and pay rent in accordance with the agreement, without becoming a tenant. The distinction

is this: If he enters awaiting the execution of the agreement, his entry is one under a license, but if, after being in possession of the premises, he pays rent for the use of them in accordance with the agreement which was to be reduced to writing, his relation is that of a tenant at will; and the distinction is plainly pointed out at the close of the section cited, where the author says:

"Any person, however, who may be in possession of land in pursuance of an agreement to let, may, by the payment of rent or other circumstances, become a tenant from year to year."

Indeed, it would seem not to require any citation of authorities to prove that when a party, under an agreement for a lease, enters into possession and pays rent for the use of the premises, the relation between the parties cannot be other than that of landlord and tenant; it certainly is not that of licensor and licensee. The tenant has acquired rights of which he cannot be divested without the proper notice, and so has the landlord.

The same result follows where a lease is made by parol for a longer term than one year, which it is agreed shall be reduced to writing, and the party enters into possession under it, and pays rent, as where a lease is made for a longer term than one year by parol, and is void under the statute of frauds, and the tenant enters and occupies, paying rent; and is ruled by the same principles which apply to the latter class. In such cases it has been uniformily held that an implied tenancy from year to year will arise in cases where occupation is had under a parol demise for more than a year, void because exceeding the period allowed by the statute of frauds. Tayl. Landl. & Ten. § 56.

Some cases hold that such a lease, although void for the period beyond a year, is good for one year, because it will be presumed that the parties intended to effect

the lease for the term for which one could legally be made; but I think the better reasoning is that a contract which is void by the terms of the statute of frauds is not good for any purpose further than to indicate what the intentions of the parties were with reference to the terms of the letting. The rights of the parties must be judged by the relation they have assumed with each other independently of the void contract. Courts, however, have referred to the contract as throwing light upon the intentions of the parties, and it has been generally held that, where a tenant enters and occupies under a parol lease for more than a year, the agreement may be looked to as showing the terms under which the tenancy subsists, in all respects, except as to the duration of the term. *Doe v. Bell,* 5 Term R. 471; 1 Cruise, Dig. 281–284; *People v. Rickert,* 8 Cow. 226; *Schuyler v. Leggett,* 2 Id. 660; *Greton v. Smith,* 33 N. Y. 245; *Clayton v. Blakey,* 8 Term R. 3; *Laughran v. Smith,* 75 N. Y. 205.

In the case last cited, which was an action to recover rent, Andrews, J., said:

"But although a parol lease for more than a year is void, yet it has long been settled that, when the tenant enters and occupies, the agreement regulates the terms on which the tenancy subsists, in all respects, except as to the duration of the term. It is a reasonable inference in such case, from the circumstances, that the parties intended a tenancy on the terms of the original agreement, and the law implies a new contract between the parties corresponding therewith, so far as it is not in conflict with the statute."

In *Koplitz v. Gustavus,* 48 Wis. 48, the tenant had gone into the occupation of the premises under a lease which was void under the statute of frauds. It was contended by counsel for the lessee that—

"As the lease was not in writing, and was for a longer period than a year, it was void; that the rent reserved was not annual, but monthly, payable at the end of

each month, on the plaintiff's demand; and that under-
these circumstances the tenancy created by holding over
was one from month to month, and determinable by 30
days' notice."

The court, in deciding the case, after stating the posi-
tion of counsel, said:

" But to this it may be answered that there are well-
considered cases which decide, under the English statute
and statutes which contain similar provisions, that while
a parol lease for more than the prescribed period creates,
in the first instance, only an estate at will, yet such
estate, when once created, may, like any other estate at
will, be converted into a tenancy from year to year, by
payment of rent or other circumstances which indicate
an intention to create such yearly tenancy."

In *Morrill v. Mackman*, 24 Mich. 279, the distinction
between a license and a tenancy is clearly pointed out,
and it was expressly held that a parol lease for more than
a year, reserving an annual rent, under which the lessee
had been put into possession, although invalid under the
statute of frauds, was good as a lease from year to year,
until terminated by notice. The principle in this case
was cited with approval and applied in *Coan v. Mole*, 39
Mich. 454.

*Schneider v. Lord*, 62 Mich. 141, was a case where
there was an unwritten lease for two years from the
beginning of the year 1884. The rent was paid monthly
for more than a year, and the lessee claimed the right
to terminate the lease on a month's notice. The case
below was decided on the ground that the tenancy was
at will from month to month, and ended by a month's
notice to quit. It was, however, held that it was a ten-
ancy from year to year, and not a monthly tenancy at
will, and the fact that the rent was payable monthly did
not any the less make it a contemplated yearly holding.

In the case at bar the contemplation of the parties
was that the holding should be at all events for one

year, and with an additional term, depending upon the election of the lessee, and as to this he was a tenant at will from year to year, and not from month to month.

If, however, it should be conceded that the tenancy was at will from month to month, still the judgment below was correct. The principles of justice and sound policy require that estates at will should not be terminated except at the will of either party, and then not without notice. This principle was long since embodied in our statutes, which, with some recent modifications in respect to notice (Act No. 162, Laws of 1885), read as follows:

" How. Stat. § 5774. All estates at will or by sufferance may be determined by either party by three months' notice given to the other party; and, when the rent reserved in a lease is payable at periods of less than three months, the time of such notice shall be sufficient if it be equal to the interval between the times of payment; and such notice shall not be held void by reason of its mentioning a day for the termination of the tenancy not corresponding to the conclusion or commencement of any such period, but in any such case the notice shall be held to terminate the tenancy at the end of a period equal in time to that in which the rent is made payable. And in all cases of neglect or refusal to pay rent on a lease at will or otherwise, seven days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease. And in all cases of tenancy from year to year a notice to quit, given at any time, shall be sufficient to terminate said lease at the expiration of one year from the time of the service of such notice."

The entry of defendant into possession under the terms of the agreement for a lease before it was executed, and paying rent in accordance with the agreement, created the relation of general tenancy at will, which could not be terminated by either party without notice to the other; and the tenant cannot, without justifiable cause, abandon the premises, and treat it as a surrender, with-

out giving the notice required by the statute. *Walker v. Furbush*, 11 Cush. 366; *Whitney v. Gordon*, 1 Id. 266; *Thomas v. Nelson*, 69 N. Y. 118; *Batchelder v. Batchelder*, 2 Allen, 105; *Schuyler v. Smith*, 51 N. Y. 309; *Koplitz v. Gustavus*, 48 Wis. 48.

The record does not show that defendant had any justifiable cause for abandoning the premises. They were not in fact or law surrendered. Vacating the premises before the expiration of the term, and offering the key, which is refused, is not a surrender. The testimony shows that defendant paid rent to July 6, vacated the premises July 3, and on the Sunday previous, namely, June 29, told the plaintiff he should move out, and plaintiff insisted that the store was rented for a year. Aside from the question whether notice given on Sunday would be valid, it plainly appears that it was entirely insufficient to terminate the tenancy, even if the holding was from month to month, and it follows as a natural consequence that until the tenancy is terminated the defendant is liable for the use and occupation of the premises.

The position is taken by counsel for the defendant that a tenant going into possession under a void lease cannot be compelled to pay rent for any longer period than he actually occupies, and in support of that position the case of *Thomas v. Nelson*, 69 N. Y. 118, is relied upon, and the following syllabus of that decision is cited:

"It seems that a parol lease, void under the statute of frauds because for a longer period than one year, is not valid for that period. If the tenant enters and occupies under it, he may be compelled to pay for the use and occupation, but cannot be compelled by virtue of the lease to pay for a longer period than he actually occupies."

The facts of that case are stated in the opinion. The

plaintiff alleged a lease for seven years. On the trial he proved a memorandum made by himself in which he stated that he was to give Mr. Nelson a lease of the building 271 Broadway for seven years, the first three years at $1,400 a year, and four years at $1,500 a year. It was said that the memorandum did not embody the contract between the parties, and was not intended to. It simply embraced the main features of the lease, and plainly indicated that a formal lease was subsequently to be executed embodying the agreement which the parties had made. The plaintiff was permitted to show a parol agreement for a lease of seven years, and the terms upon which the parties had agreed. The court ruled upon the trial below in his charge to the jury that such a lease, although invalid for a term of seven years, was valid for a term of one year. Under these rulings there was no exception, and Mr. Justice Earl, in delivering the opinion of the court of appeals, said:

"While such a contract is void, yet, if the tenant enters under it and occupies, he may be compelled to pay for the use and occupation of the premises [citing authorities]; but it is difficult to perceive how such a contract, declared to be void by the statute, can be held to be valid for a single hour, or upon what principle a tenant entering under a void lease could be compelled, by virtue of the lease, to pay for a longer period than he actually occupied."

This probably is the language from which the syllabus was composed, but a further reading of the opinion will disclose that what the court meant by actual occupation was an occupation under the tenancy, and until it had been legally terminated; for in the next clause the court proceeds as follows:

"In August the defendant moved away from the premises, and sent the keys of the house to the plaintiff in a letter, and they were not returned. He claimed upon the

trial that the retention of the keys was an acceptance of the surrender of the premises. The plaintiff was not bound to seek the defendant, and tender a return of the keys. The court held that the mere retention of the keys, which were sent to him without his request or assent, did not of itself amount to a surrender and acceptance, and in this there was no error."

So that it plainly appears that a tenant at will, until the tenancy is legally terminated by notice, is bound to pay for the use and occupation, and that the mere vacating of the premises during the term, or while the tenancy exists, does not exonerate him from the payment for the use and occupation of the premises until the relation of landlord and tenant is legally terminated.

The judgment must be affirmed.

The other Justices concurred.