93 217
105 314

93 217
112 225

</div>

## Frezina Ganson v. Alvin Baldwin.

*Landlord and tenant—Yearly holding—Notice to quit—Summary proceedings—Condition of occupancy.*

1. A summary proceeding to recover the possession of land held by a tenant from year to year was commenced before the expiration

of one year from the service of notice to quit. The complainant recovered judgment, which the defendant removed to the Supreme Court, where he for the first time raised the objection that the notice was insufficient. It appeared, however, that the statutory year had then elapsed, and that the complainant was entitled to the premises, and the judgment is affirmed.

2. Complainant, in consideration of defendant's verbal agreement for her support, put him in possession of her land, and, on his failure to perform his agreement, instituted summary proceedings to eject him; and, while the testimony fails to show that there was an express agreement that defendant should forfeit his possession in case of a failure to furnish the agreed support, the Court hold that such must have been the understanding of the parties, and a judgment in favor of the complainant for the possession of the premises is affirmed.

Error to St. Clair. (Canfield, J.) Argued June 24, 1892. Decided October 4, 1892.

Summary proceedings to recover possession of land. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Avery, Jenks & Avery* (*Joseph Walsh,* of counsel), for appellant.

*James L. Coe,* for complainant.

MORSE, C. J. The action in this case was commenced before a circuit court commissioner for the recovery of the possession of the S. $\frac{1}{2}$ of the S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 6, township 6 N., of range 17 E., county of St. Clair. The cause was appealed to the circuit court, where the complainant had verdict and judgment.

The husband of the complainant, one Samuel Ganson, owned the N. $\frac{1}{2}$ of the S. $\frac{1}{2}$ of said N. W. $\frac{1}{4}$ of said section 6, and on the 30th day of July, 1886, he entered into the following agreement with the defendant:

"This memorandum of agreement, made and concluded

between Samuel Ganson of the first part and Alvin Baldwin of the second part, witnesseth:

"That whereas, the said party of the first part, by reason of the uncertainties of life, and his condition and age, deems it necessary to place himself and wife under the protection and care of some kindly disposed person during the remaining portion of the natural life of himself and wife, Frezina.

"Now, therefore, it is agreed between the parties of the first and second part hereto that the party of the first part, for and in consideration that the party of the second part, during the natural life-time of the party of the first part, keep him and his wife, Frezina, in a comfortable condition of living, suitable to their situation in life, furnishing him all necessaries, and suitable board, food, clothing, medicines, and medical attendance, care, attention, and nursing in sickness or helplessness, washing, ironing, and mending, conveys to said second party by warranty deed the north half of the south half of the north-west quarter of section 6, township 6 north, of range 17 east, containing 40 acres of land; and the said party of the second part, for himself and his heirs, executors, or administrators, in view of the consideration before stated, hereby agrees to in all things comply with the recitals and requirements of the party of the first part hereinbefore stated.

"In case the said second party fails to comply, either in whole or in part, to fulfill his agreement, then the deed of said premises to be void and of no effect, and the party of the first part may at once re-enter and repossess himself of said premises without notice to quit; and the party of the second part, for himself, agrees fully to comply with the requirements herein contained and by him to be performed, or will reconvey said premises.

"And it is further agreed by the parties hereto that, in case the wife of the party of the first part should outlive him, the second party is only bound to a strict compliance of this agreement as to her support and maintenance as long as she remains on the premises now occupied by her, to wit, the south half of the south half of the north-west quarter of section 6, township 6 north, of range 17 east.

"And it is further agreed by the parties hereto that the party of the second part is to have the use of the last-described premises, occupied by the wife of the party of

the first part, during her life-time, excepting only the house thereon, and party of the second part to pay all taxes, ordinary as well as extraordinary, and all expense, on said premises during the life-time of said first party and his wife.

"Witness our hands and seals, this 30th day of July, A. D. 1886.

<div style="text-align:right">

"SAMUEL GANSON.  [L. S.]
"ALVIN BALDWIN.  [L. S.]"

</div>

This agreement was duly acknowledged and recorded. At the same time Ganson deeded the north 40 to defendant and the south 40 to his wife. It is claimed by complainant that a bargain was also made as to the possession and occupation by the defendant of the south 40, the land in question here. This agreement, in substance, was that the defendant would keep complainant's two cows, and she should have the orchard and garden, a pig in the pen, and chickens, and for the use of the place defendant should also give the Gansons their living.

Baldwin moved upon the place in the fall of 1886. April 17, 1890, the following notice to quit was served upon defendant:

"SIR: Take notice that, so far as I may be interesten by reason of my acquiescence or otherwise in a certain agreement dated July 30, 1886, signed by Samuel Gansod and yourself for the use and purposes therein expressed, as to the following described premises, to wit: The south half of the south half of the north-west quarter of section six (6), town six (6) north, range seventeen (17) east, and used and occupied by you since the date of said agreement, I have elected and do hereby declare the said agreement forfeited, and the terms and conditions thereof no longer binding upon me, on account of your failure to comply, either in whole or in part, your part of the terms and conditions thereof, viz., to furnish necessary and suitable board, food, clothing, medicines, and medical attendance, care, attention, nursing in sickness or helplessness, washing, ironing, or mending. Therefore, you are

hereby notified and required at once to quit and yield and deliver up the possession of the said premises to me.

" FREZINA $\overset{\text{her}}{\underset{\text{mark.}}{\times}}$ GANSON.

" Dated April 16, 1890."

The defendant testified that he never had any agreement with Mrs. Ganson, but that in the spring of 1887, after he had taken possession of the place, he agreed with her husband that he would keep the two cows and a horse, and give them the garden and orchard, and furnish them their wood, and that they should keep themselves; and also told him that, if there was anything else he wanted, defendant would get it, when asked for it.

It will be seen that the only arrangement that could have been binding upon the complainant was the one testified to by herself. This 40 acres of land was her homestead, and could not have been sold or leased without her consent, even before it was deeded to her by her husband. The defendant testified that he never furnished complainant anything, and had no dealings with her. If the testimony as to the agreement was believed by the jury, the complainant was entitled to recover, as defendant admits such agreement was not fulfilled.

It is contended that there was no agreement of re-entry in the lease, and that the complainant was therefore not entitled to possession because of the failure of the defendant to fulfill his contract. The following cases are cited to support this contention: *Dayton v. Vandoozer,* 39 Mich. 749; *Langley v. Ross,* 55 Id. 163; *Hilsendegen v. Scheich,* Id. 468; *Hanaw v. Bailey,* 83 Id. 24; *Pickard v. Kleis,* 56 Id. 604; *Wakefield v. Mining Co.,* 85 Id. 605.

These cases do not apply. According to the testimony of complainant, the main consideration for the use and possession of her land was her support. While there is no

testimony that there was an agreement made in exact words that if defendant did not support her he should forfeit his possession of the premises, it cannot be successfully maintained but that the clear understanding must have been that the support of complainant was a condition upon which possession must be based. In the written agreement between Ganson and defendant, under which defendant claims to hold the premises, there is a clause of re-entry and forfeiture, and it is not to be supposed for a moment that it was understood or intended by either party that the agreement to support was a covenant simply, and not a condition. In *Langley v. Ross* and *Hanaw v. Bailey,* *supra,* the re-entry clause was stricken from the written lease, and in all of the cases cited the circumstances or wording of the agreement showed an intention not to make the failure to perform certain covenants a ground of forfeiture of the lease.

It is said that there was no demand for support, and that the lease could not be forfeited until such demand was made. We think there was sufficient testimony to go to the jury, showing that complainant was dissatisfied because she received no support, and complained about it, and that defendant knew of this complaint, and refused to give any support.

This agreement, however, as testified to by complainant, was good for a year, and, while acquiesced in by her, the defendant must be considered as holding from year to year. *Schneider v. Lord,* 62 Mich. 141; *Huntington v. Parkhurst,* 87 Id. 38, and cases there cited. The defendant was therefore entitled to a year's notice to quit. 3 How. Stat. § 5774. The notice given was insufficient. But complainant's counsel claims that no point was made against the notice in this respect in the court below, and that it is now too late to raise it here. A careful examination of the record, including defendant's requests to charge,

sustains this claim.   It is also strengthened by the fact that, in the primal brief of defendant, no mention is made of this defect in the notice.   As under the statute (section 5774, 3 How. Stat.) the notice given terminated the tenancy in one year from the date of its service, and the complainant is now entitled to the premises, and the objection to the notice being first raised in this Court, the judgment of the court below will be affirmed, with costs.

The other Justices concurred.