ANNA A. GRADY v. FRANK T. WARRELL.

*Executors and administrators—Lease of decedent's realty—Tenancy from year to year—Termination.*

1. How. Stat. § 5875, gives to executors the right to lease the real estate of the testator from year to year, subject to the contingency of its being turned over to the heirs or devisees on their making it appear to the probate court that there are no debts or liabilities outstanding and unpaid against the estate, or that the personal estate is amply sufficient for the payment of all claims or liabilities outstanding or allowed against the estate.

2. A lessor died during the life of the lease, and 24 days before the expiration of the term his executors leased the premises for two years to the assignee of the lessee, who was in possession. The term of said lease was to commence two months after the expiration of the original lease. About nine months after the commencement of the term of the new lease, the leased premises were set off on partition to one of the heirs of the lessor, who, after giving notice to quit, brought sum-

mary proceedings under the statute to recover possession of the leased premises. And it is held that, by accepting the lease from the executors, the tenant precluded himself from claiming to be holding over under the lease from the testator, and whatever rights he has depend upon the nature of his tenure under the lease from the executors.

3. The term "from year to year," as used in How. Stat. § 5875, which authorizes an executor to lease the real estate of the testator from year to year, should be construed according to the well-understood meaning of the term; and a lease executed by executors for two years, being void, creates a tenancy from year to year, as in ordinary cases, terminable under 3 How. Stat. § 5774, at the expiration of one year from the time of the service of a notice to quit.

Error to Kent. (Grove, J.) Submitted on briefs April 4, 1895. Decided May 21, 1895.

Summary proceedings to recover the possession of leased premises. Complainant brings error. Affirmed. The facts are stated in the opinion.

*Hatch & Wilson,* for appellant.

*Dunham & Preston,* for defendant.

HOOKER, J. Complainant appeals from a judgment against her in summary proceedings to recover possession of the west 32 feet of lot 8, block 6, Campau's plat, in the city of Grand Rapids. Upon lot 8 was an hotel and barn, the premises being known as the "Michigan House." Jacob Nagle, complainant's ancestor, was the owner in fee, and he made a lease of the premises for the term of three years from May 1, 1887, to Ira C. Hatch. On July 5, 1888, he extended the lease for two years more. In 1889 the barn burned, and a new lease was made by the same parties dated November 1, 1889, for two and a half years from September 1, 1889, rent payable quarterly. Hatch never occupied, but assigned to the defendant, who remained in possession and paid the rent. Jacob Nagle died March 6, 1891, and on February 4, 1892, his

executors attempted to lease to Warrell the premises for two years, the term to commence upon May 1, 1892, rent being payable monthly. This lease was in writing. On February 9, 1893, the lands of the deceased were partitioned among his heirs, and the west 32 feet of lot 8 was set off to the complainant. On March 11, 1893, the complainant gave defendant notice to quit, and these proceedings were commenced on May 22, 1893.

The defendant claims that he was entitled to a notice of a year, under 3 How. Stat. § 5774. This is upon the theory that the lease for two years, though not authorized by the statute (How. Stat. § 5875), was a valid lease from year to year. On the other hand, the complainant contends that the lease was void, for the reason that there was no necessity for the executors to take possession of the real estate, inasmuch as there was more than sufficient personal property to pay the debts. The case of *Rough v. Womer*, 76 Mich. 375, is cited in support of this claim. She asserts, further, that if it should be held that the executors might make a valid lease, it could be for one year only, and would terminate at the end of the year without notice, though in terms a lease for two years.

The authority under which executors may lease is derived from the statute (section 5875), which reads as follows:

"The executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may lease the same from year to year, and cancel or modify any existing lease or leases given by the deceased in the same manner that the deceased might have done in his lifetime, and may receive the rents, issues, and profits of the real estate until the estate shall have been settled, or until delivered over by order of the probate court to the heirs or devisees; and shall keep in good tenantable repair all houses, buildings, and fences thereon which are under his control: *Provided*, that whenever, on application of the heirs or devisees, or any of them, it shall be made to appear to the said probate court that there are no debts or liabilities out-

standing and unpaid against said estate, or that the personal estate of said deceased is amply sufficient for the payment of all claims or liabilities outstanding or allowed against the said estate, the said probate court shall thereupon, by order, deliver over the said real estate of said deceased to the heirs or devisees of said estate, although the said estate shall not then have been finally settled, and thereupon the right of the said executor or administrator to the possession of the real estate of said deceased, and to receive the rents, issues, and profits thereof, shall cease: *Provided* further, that the provisions of this act shall not be construed to interfere with the possession of the homestead."

This section gives the executor the right to lease, subject to the proviso which permits the heirs or devisees to move the probate court for an order to the executor to deliver over the premises, where it appears that the personal estate is ample to pay the debts and liabilities of the estate. The case of *Rough v. Womer*, relied upon by counsel for the complainant, is not at variance with this. In that case the testator's son, to whom the wheat in question and the farm on which it grew were specifically devised, brought trover for the wheat taken from his possession by the executors. It appeared that the personal estate was ample to pay all claims and liabilities, and the court said that it was not only unnecessary for the executors to take the wheat, but that it was inexcusable, arbitrary, and unjust; that the plaintiff was in lawful possession of the land at the time; and that the acts of the executors were willful and malicious. It was said further that, the plaintiff being in possession, there was no occasion for him to apply to the probate court under the statute.

But the case here arises, not between the heir and the executor, but between the heir and one who has taken a lease under the statute, under which he was allowed to take and keep possession. It would not do to hold that such lease is invalid, for a lessee under this statute cannot be required to ascertain, at his peril, whether an

estate is solvent, before contracting, where the executor is in apparent control of the land and able to give possession.

The case, therefore, resolves itself into the question whether the two-year lease created a tenancy from year to year, or was merely a lease for one year. By accepting this lease, and paying rent under it, the defendant precluded himself from claiming to be holding over under the lease from the testator, and whatever rights he has depend upon the nature of his tenure under the lease from the executors. If that instrument was a valid lease for one year and no more, the notice of March 11 was sufficient to terminate it, if notice was necessary. If, however, this lease created a tenancy from year to year, the defendant was entitled to a notice of a year, under the statute. 3 How. Stat. § 5774; *Huntington v. Parkhurst*, 87 Mich. 38; *Ganson v. Baldwin*, 93 Id. 217. The authority of the statute only enables the executor to lease at all. The language of the statute is that he may lease "from year to year." Evidently the design of the statute was to permit temporary letting, and there is force in the contention that it should not be so construed as to permit an executor to make a lease for two years, which it is said he practically does when he makes a lease from year to year. But this is not necessarily true, for, under the statute (3 How. Stat. § 5774), a tenancy from year to year may be terminated in one year by giving a notice at any time. There are reasons for thinking that the Legislature may have intended to allow executors to give technical leases from year to year. It is well known that farming lands are almost invariably leased in the spring. Such a lease for a single year does not permit the raising of a crop of wheat, which is the great staple crop of the State, and without the privilege of raising which the rental value of farming lands would be lessened. The heir, when he comes into possession, may terminate the lease in a year, and meantime he receives the rents. Both are protected,—the heir by the statute,

which gives him the rent, and the tenant by the same statute, which enables him to sow fall crops with an assurance that he may reap. We therefore conclude that we should construe this statute according to the well-understood meaning of the term "from year to year" (see How. Stat. § 2, subd. 1), and not limit the right to a lease for one year, and that, therefore, the void lease for two years created a tenancy from year to year, as in ordinary cases.

The judgment of the circuit court will be affirmed.

The other Justices concurred.